## DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. CROIX

|  |  |
|---|---|
| **NEREIDA RIVERA O'REILLY,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Civil Action No. 2014-0107 |
| ) | |
| **BOARD OF ELECTIONS, ST. CROIX** ) | |
| **DISTRICT; ADELBERT M. BRYAN;** ) | |
| **LILLIANA BELARDO DE O'NEAL;** ) | |
| **RUPERT W. ROSS, JR.; GLENN WEBSTER;** ) | |
| **LISA HARRIS-MOORHEAD;** ) | |
| **RAYMOND J. WILLIAMS;** ) | |
| **ROLAND MOOLENAAR (all named in** ) | |
| **their official capacity only); and** ) | |
| **THE GOVERNMENT OF THE** ) | |
| **VIRGIN ISLANDS,** ) | |
| ) | |
| **Defendants,** ) | |
| ) | |
| **ALICIA CHUCKY HANSEN,** ) | |
| ) | |
| **Intervenor-Defendant.** ) | |
| ) | |

**Attorneys:**

**Joel H. Holt, Esq.**
St. Croix, U.S.V.I.
    *Attorney for Plaintiff*

**Erika Marie Scott, Esq.,**
St. Croix, U.S.V.I.
    *Attorney for Defendants*

**Lee J. Rohn, Esq.,**
St. Croix, U.S.V.I.
    *Attorney for Intervenor-Defendant*

# MEMORANDUM OPINION

**Lewis, Chief Judge**

THIS MATTER comes before the Court on the Notice of Removal, filed by Intervenor-Defendant, Alicia "Chucky" Hansen ("Senator Hansen"), on December 15, 2014. (Dkt. No. 1). Senator Hansen has removed to the District Court an action brought by Senator Nereida Rivera O'Reilly ("Senator O'Reilly") in the Superior Court of the Virgin Islands. In that action, *O'Reilly v. Bd. of Elections*, *St. Croix District, et. al.*, Civil No. SX-2014-CV-461, Senator O'Reilly is challenging a recount—requested by Senator Hansen—of the votes cast in the November 4, 2014 general election on the grounds that Defendants Board of Elections, St. Croix District, Adelbert M. Bryan, Lilliana Belardo de O'Neal, Rupert W. Ross, Jr., Glenn Webster, Lisa Harris-Moorhead, Raymond J. Williams, Roland Moolenaar, and the Government of the Virgin Islands (collectively, "Defendants") have violated, or are violating, several local election laws in conducting the recount. (Complaint, Dkt. No. 1-1). The Complaint also alleges that the recount is being conducted "in violation of the Plaintiff's rights to fundamental fairness as well as her rights to equal protection and due process of law." *Id.* ¶ 15.

Citing the allegation that Senator O'Reilly's equal protection and due process rights are being violated, Senator Hansen argues in the Notice of Removal that federal question jurisdiction exists over the Complaint because it asserts a violation of federal constitutional law over which the District Court has original jurisdiction. (Dkt. No. 1 at 6, ¶ 11). While the Court finds that it has jurisdiction over Senator O'Reilly's Complaint, it will exercise its discretion under the *Pullman* abstention doctrine to abstain from adjudicating the Complaint, and will therefore remand the matter to the Superior Court.

## I.   PROCEDURAL HISTORY

On December 8, 2014, Senator O'Reilly filed the instant Complaint in the Superior Court of the Virgin Islands, styled as an "Action for Mandamus, Permanent Injunction and Declaratory Relief." (Dkt. No. 1-1). The Complaint alleges that Senator O'Reilly is a "sitting Senator" who has "currently been re-elected to the Legislature of the Virgin Islands during the on-going 2014 election process based upon the November 15, 2014, certified election votes." *Id.* ¶ 2. The Complaint further alleges that Senator Hansen "did not get re-elected during this 2014 election cycle based on the initial counting of ballots." *Id*. ¶ 4. The Complaint then alleges that a recount of the votes cast in the 2014 election, which was requested by Senator Hansen, has been plagued by the following alleged violations of local election law under Title 18 of the Virgin Islands Code: (1) a violation of 18 V.I.C. § 625, whereby the Board of Elections "improperly counted certain ballots for Hansen, attributing votes to her that were cast for over 60 different names," *id.* ¶ 5; (2) another violation of § 625 when the Board "failed to provide a list showing the number of ballots it declared void as well as the number of blank ballots cast for a candidate," *id*. ¶ 6; (3) a violation of 18 V.I.C. § 629(a) as a result of the untimeliness of Senator Hansen's request for a recount, *id.* ¶ 7; (4) a violation of 18 V.I.C. § 625, because Senator Hansen, who mounted a write-in campaign in the November 4, 2014 election, is not a "candidate" as defined in 18 V.I.C. § 1, and therefore is not entitled to seek a recount, *id.* ¶ 8; and (5) a violation of 18 V.I.C. § 629(b) because the Board of Elections did not act upon Senator Hansen's request for a recount within the time required, *id.* ¶ 9.[1] Senator O'Reilly adds that the Board's unlawful conduct was

---

[1] The Complaint also alleges that the Board began conducting the recount in violation of 18 V.I.C, § 629(b), which requires the recount to be open to the public. (Dkt. No. 1-1 at 3, ¶ 12). The Superior Court Judge assigned to the instant case was also assigned to adjudicate *Daily News Publishing Co., Inc. v. Virgin Islands Joint Bd. of Elections, et al*., SX-14-CV-460, where the Daily News sought a Temporary Restraining Order and Emergency Injunctive Relief

"further tainted by its improper decision to change the method of counting the votes during the recount by agreeing that ballots with any mark for Hansen would be counted even if the 'bubble' on the ballot was not marked, as required for other candidates[.]" *Id.* ¶ 11. Senator O'Reilly concludes that "[f]or all of the foregoing reasons, the recount process is being conducted in complete violation of Title 18 of the Virgin Islands Code," *id.* ¶ 14, and that the recount "is also being conducted in violation of the Plaintiff's rights to fundamental fairness as well as her rights to equal protection and due process of law." *Id.* ¶ 15. She claims that as a result of this illegal conduct, she is harmed because the recount is "now improperly delaying the final certification of the election results, causing irreparable injury to her." *Id.* ¶ 16.

Attached as an exhibit to the Removal Motion is a "Motion and Memorandum in Support of Request for Mandamus Relief and/or Other Equitable Relief" filed by Senator O'Reilly in the Superior Court on December 9, 2014. (Dkt. No. 1-2). This motion requests equitable relief based on "the on-going improper actions of the Board of Elections, St. Croix Division, in conducting a recount of the write-in votes for Alicia 'Chucky' Hansen[.]" *Id.* at 1. Senator O'Reilly argues that: (1) Senator Hansen has no standing to seek a recount, as she is not a "candidate" as defined by 18 V.I.C. § 1; (2) the mandatory time to conduct a recount, pursuant to 18 V.I.C. § 629(b), has expired; (3) the recount process violates Plaintiff's rights to avoid arbitrary and disparate treatment of the members of the electorate, as noted in *Bush v. Gore*, 531 U.S. 98, 105 (2000); and (4) the recount is being conducted improperly and, if it goes forward, it should comply with 18 V.I.C. § 625. *Id.* at 4-9.

---

requiring the Board of Elections to adhere to 18 V.I.C. § 629(b) by ensuring that the recount process be made accessible to the public. On December 9, 2014, the Superior Court Judge issued a Memorandum Opinion (Dkt. No. 1-2 at 21-25) and Order, *id.* at 26, requiring the defendants to "provide a general area where the media and the public can observe the recount proceedings." *Id.*

4

Senator Hansen contends, *inter alia*, that she has removed this action pursuant to 28 U.S.C. §§ 1441(a) and 1446, on the ground that the District Court has original jurisdiction over the Complaint, based on federal question jurisdiction, 28 U.S.C. § 1331, and supplemental jurisdiction over the state claims, pursuant to 28 U.S.C. § 1367. *Id.* ¶ 11. Senator Hansen adds that she has timely removed the case; that all Defendants have "consented to the removal of the Superior Court action to this Court"; and that she has been informed that the other Defendants are "independently going to file a consent to removal." *Id.* ¶¶ 12, 13.[2]

## II. DISCUSSION

### A. Removal

The removal of cases from state to federal court is governed by Sections 1441 and 1446 of Title 28 of the United States Code. Section 1441 provides that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). Section 1446 sets forth the procedure for removing civil actions.

The party seeking removal bears the burden of establishing federal jurisdiction. *See Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97 (1921); *Samuel-Bassett v. KIA Motors America, Inc.*, 357 F.3d 392, 397 (3d Cir. 2004) ("The party asserting jurisdiction bears the burden of showing that at all stages of the litigation the case is properly before the federal court."). Removal statutes "are to be strictly construed against removal and all doubts should be resolved in favor of remand." *Steel Valley Auth. v. Union Switch & Signal Div.,* 809 F.2d 1006, 1010 (3d Cir. 1987); *Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 810 (1986) (because

---

[2] As of the date of this Memorandum Opinion, no consent to removal has been filed in this Court by the other Defendants.

removal jurisdiction raises substantial federalism concerns, it is to be strictly construed; "determinations about federal jurisdiction require sensitive judgments about congressional intent, judicial power, and the federal system.").

In considering whether removal under Section 1441 is properly based on original "federal question" jurisdiction, federal courts must determine if "a claim aris[es] under the Constitution, laws, or treaties of the United States (within the meaning of section 1331 of this title)." 28 U.S.C. § 1441(c).[3] In making this determination, courts apply the rule of the "well-pleaded complaint," under which "federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 391–92 (1988). A removed case must be remanded if the District Court lacks subject matter jurisdiction. 28 U.S.C. § 1447(c).

Senator O'Reilly's Complaint alleges, *inter alia*, that her due process and equal protection rights are being violated as a result of how the recount is being conducted. Senator O'Reilly's equal protection and due process allegations present claims arising under the United States Constitution. "'The power to remedy the unconstitutional wrong is one delegated to the United States by the Constitution. The Constitution expressly provides for federal court jurisdiction in claims arising under this Constitution (or) laws of the United States. U.S. Const. art. 3, § 2. Congress has given the federal courts original jurisdiction over such claims. 28 U.S.C. § 1331.'" *Treasurer of N.J. v. U.S. Dep't of Treasury*, 684 F.3d 382, 403 (3d Cir. 2012) (quoting *Bolden v. City of Mobile*, 571 F.2d 238, 247 (5th Cir. 1978), *rev'd on other grounds, City of Mobile v. Bolden*, 446 U.S. 55 (1980)). The Revised Organic Act, 48 U.S.C. § 1612(a), provides

---

[3] Because the "arising under" language found in Section 1441 is nearly identical to the "arising under" language contained in Section 1331, the scope of removal based on "arising under" jurisdiction under Section 1441 is considered to be identical to that under Section 1331. See *Caterpillar Inc. v. Williams*, 482 U.S. 386, 391–92 (1987).

6

that the District Court of the Virgin Islands "shall have the jurisdiction of a District Court of the United States." *See also* Revised Organic Act, 48 U.S.C. § 1561 (extending certain provisions of and amendments to the United States Constitution to the Virgin Islands, including the Equal Protection and Due Process Clauses of the Fourteenth Amendment). Removal is therefore proper under 28 U.S.C. § 1441(a) because this is a case where the District Court has original jurisdiction over Senator O'Reilly's constitutional claims.

### B. Abstention

The general rule concerning federal jurisdiction is that federal courts are bound to adjudicate cases within their jurisdiction. *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 358-59 (1989). The abstention doctrines, which take their names from the cases in which the Supreme Court first articulated them, are "extraordinary and narrow exception[s]" to the rule that federal courts must exercise the jurisdiction that has been conferred. *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 813 (1976) (citation omitted). Abstention is a "judicially created doctrine under which a federal court will decline to exercise its jurisdiction so that a state court or state agency will have the opportunity to decide the matters at issue." *Kentucky West Virginia Gas Co. v. Pennsylvania Public Utility Comm'n*, 791 F.2d 1111, 1114 (3d Cir. 1986) (citation omitted). The Supreme Court has "explained the power to dismiss or remand a case under the abstention doctrines in terms of the discretion federal courts have traditionally exercised in deciding whether to provide equitable or discretionary relief." *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 730 (1996). The Court may consider abstention *sua sponte* when deciding whether to exercise otherwise proper federal jurisdiction. *See Bellotti v. Baird*, 428 U.S. 132, 143 n.10 (1976) ("Indeed, it would appear that abstention may be raised by the court *[s]ua sponte*."); *Smolow v. Hafer*, 353 F. Supp. 2d 561,

572-73 (E.D. Pa. 2005) (opining that a court may raise *sua sponte* the possibility of *Pullman* abstention) (citing *Bellotti,* 428 U.S. at 143 n.10).

The Court finds that, under the particular circumstances of this case, *Pullman* abstention—first articulated by the Supreme Court in *R.R. Comm'n v. Pullman Co.*, 312 U.S. 496 (1941)—is appropriate here. This abstention doctrine "applies 'in cases presenting a federal constitutional issue which might be mooted or presented in a different posture by a state court determination of pertinent state law.'" *Planned Parenthood of Central N.J. v. Farmer*, 220 F.3d 127, 149 (3d Cir. 2000) (quoting *Colorado River*, 424 U.S. at 814). In other words, *Pullman* abstention may be employed "where an unconstrued state statute is susceptible of a construction by the state judiciary 'which might avoid in whole or in part the necessity for federal constitutional adjudication, or at least materially change the nature of the problem.'" *Id.* (quoting *Bellotti*, 428 U.S. at 147). "The purpose of abstaining is twofold: (1) to avoid a premature constitutional adjudication which could ultimately be displaced by a state court adjudication of state law; and (2) to avoid 'needless friction with state policies.'" *Id.* (quoting *Pullman*, 312 U.S. at 500). The Third Circuit counsels, however, that *Pullman* abstention "should be rarely invoked." *Id.*

The Third Circuit has held that "three exceptional circumstances" are prerequisites to abstention under *Pullman:*

> First, there must be "uncertain issues of state law underlying the federal constitutional claims." *Presbytery of N.J. of the Orthodox Presbyterian Church v. Whitman*, 99 F.3d 101, 106 (3d Cir. 1996). . . . Second, the state law issues must be amenable to a state court interpretation which could "obviate the need to adjudicate or substantially narrow the scope of the federal constitutional claim." *Id.* Third, it must be that "an erroneous construction of state law by the federal court would disrupt important state policies." *Id.* If all three circumstances are present, the District Court is then required to determine, in the Court's discretion, "whether abstention is appropriate by weighing such factors as the availability of an adequate state remedy, the length of time the litigation has been pending, and

> the impact of delay on the litigants." *Artway [v. Attorney Gen. of N.J.]*, 81 F.3d 1235, 1270 (3d Cir. 1996).

*Planned Parenthood*, 220 F.3d at 149-50; *see also Hughes v. Lipscher,* 906 F.2d 961, 964 (3d Cir. 1990).

Upon consideration of these factors, the Court concludes that *Pullman* abstention is appropriate under the circumstances here. First, there are several "uncertain issues of state law underlying the federal constitutional claims." *Id.* at 149. Senator O'Reilly's Complaint is replete with alleged violations of local election laws, grounded in statutory provisions—18 V.I.C. §§ 625 and 629—that have not been construed by either the Superior Court of the Virgin Islands or the Supreme Court of the Virgin Islands in the various contexts in which the challenges are presented in the Complaint. There is no case law interpreting 18 V.I.C. § 625 when considering the tallying of votes for write-in candidates, such as Senator Hansen, particularly where voters set forth numerous permutations of her name, as shown on the relevant documents, Dkt. No. 1-1 at 6-15. *See* Complaint, Dkt. No. 1-1 ¶ 5. There is no case law concerning whether a person mounting a write-in campaign in the general election, such as Senator Hansen, is considered a "candidate" under § 625, as defined in 18 V.I.C. § 1, and therefore has standing to request a recount. *See id*. ¶ 8. There is no case law interpreting § 625 when the Board of Elections allegedly "fail[s] to provide a list showing the number of ballots it declared void as well as the number of blank ballots cast for a candidate," which may be used as information for candidates considering a recount. *See id.* ¶ 6. There is no case law concerning how to interpret the time period for a recount under 18 V.I.C. § 629(b), or what the appropriate remedy may be if a request for a recount is untimely or if the Board of Elections does not timely act upon the request for a recount, pursuant to 18 V.I.C. §§ 629(a) and (b). *See id.* ¶¶ 7, 9. In sum, this Court "simply [does] not know how the courts of [the Virgin Islands] would interpret" these statutes and

resolve the litany of local election law issues underpinning the federal constitutional claims. *Presbytery of N.J.*, 99 F.3d at 107.

Second, if the Superior or Supreme Court of the Virgin Islands interprets the local election laws in such a manner as to find that some or all of Defendants' acts complained of by Senator O'Reilly run afoul of the law, such a finding could substantially narrow, if not obviate the need to address, Senator O'Reilly's federal constitutional claims. In addition, resolution of the local issues may change the nature of the constitutional issues presented, especially under the circumstances here where the local issues are so predominant and in view of the fact that "'not every state election dispute implicates federal constitutional rights.'" *Bierley v. Sambroak*, 2014 WL 710004, at * 4 (W.D. Pa. Feb. 25, 2014) (quoting *Shannon v. Jacobowitz*, 394 F.3d 90, 94 (2d Cir. 2005)). Thus, the second abstention requirement is satisfied. *See Planned Parenthood*, 220 F.3d at 149 (state court determination of local law may narrow or eliminate the need for federal constitutional adjudication, or change the posture of the constitutional issue); *see also Baggett v. Bullitt,* 377 U.S. 360, 376-77 (1964) (ruling that *Pullman* abstention is triggered where "the unsettled issue of state law principally concern[s] the applicability of the challenged statute to a certain person or a defined course of conduct, whose resolution in a particular matter would eliminate the constitutional issue and terminate the litigation.").

The third requirement—that an erroneous construction of state law by the federal court would disrupt important state policies—is also met because the regulation and conduct of elections are matters of paramount interest to local government. *See Arizona v. Inter Tribal Council of Arizona, Inc.,* 133 S. Ct. 2247, 2261 (2013) (observing that state's "undoubted interest" in regulation and conduct of elections "ought not to be deemed by this Court to be a subject of secondary importance."); *cf. Valenti v. Mitchell*, 962 F.2d 288, 301 (3d Cir. 1992)

("The state's interest in a timely and orderly election is strong."). Given the elections context, together with the significant number of uncertain issues of local law presented, interpretations of the local law by the federal court that are subsequently deemed erroneous by the local court would disrupt important state policies. *Chez Sez III Corp. v. Twp. of Union*, 945 F.2d 628, 631, 633 (3d Cir. 1991).

Not only are the three prongs of the "exceptional circumstances" test present, but the *Pullman* factors that the Court must determine, in its discretion—such as the availability of an adequate state remedy, the length of time the litigation has been pending, and the impact of delay on the litigants caused by the abstention—also counsel in favor of abstention. Third Circuit cases determining whether timely and adequate state court review is available have focused on "whether the state courts have jurisdiction over the plaintiffs' claims[.]" *Phila. City Council v. Schweiker*, 40 F. App'x 672, 679 n.5 (3d Cir. 2002). This case was already in state court prior to remand, and there is no question that the Superior Court has jurisdiction over this matter. Moreover, based on the filings attached to the Motion to Remand, it appears that the case has been proceeding expeditiously in the Superior Court since its initiation on December 8, 2014. (Dkt. No. 1-2 at 21-26). Thus, abstention by this Court would not delay these proceedings, but rather support its timely resolution. On the other hand, removal to this Court would result in an unnecessary interruption of the ongoing proceedings in a matter that is clearly time-sensitive given the impending transition to the newly-elected Legislature. Accordingly, these additional *Pullman* factors favor abstention.

Finally, this Court concludes that abstention in this case accords with "principles of federalism and comity." *Growe v. Emison*, 507 U.S. 25, 32 (1993). In view of the host of local election law issues of first impression in this jurisdiction, this Court finds that the local claims

11

predominate and the Territory's interests are therefore paramount. Moreover, as pleaded, this is not a case of substantial constitutional dimensions that involves, for example, the infringement and burdening of citizens' rights to vote and to participate in the political process—substantial federal interests which might counsel against abstention. *See Schweiker*, 40 F. App'x at 678 (noting that federal court should take into account the nature of the federal interest asserted in deciding whether to abstain) (citing *Siegel v. Lepore*, 234 F.3d 1163, 1174 (11th Cir. 2000)). Accordingly, under the circumstances here, this matter would best be adjudicated in the local courts. In sum, the "policies of promoting comity with the state courts and ensuring the smooth functioning of the federal judiciary" counsel in favor of remanding this matter to Superior Court pursuant to the abstention doctrine articulated in *Pullman*. *Hughes,* 906 F.2d at 964.

### III. CONCLUSION

The Court finds that it has jurisdiction over this matter. However, pursuant to the abstention doctrine set forth in *Pullman*, the Court will abstain from asserting jurisdiction in this case, and will remand it to the Superior Court. An appropriate Order accompanies this Memorandum Opinion.

Date: December 23, 2014 _____/s/_____
WILMA A. LEWIS
Chief Judge